Jacob Markowitz, J.
This is an application pursuant to article 78 of the Civil Practice Act, by 16 teachers to set aside, as arbitrary and capricious, an amendment to the by-laws of the Board of Education insofar as it adds to the experience requirements for the license of assistant to principal.
Prior to February, 1959 the experience requirement for the license of assistant to principal consisted of 1 ‘ five years of teaching under appointment in day school” (by-laws, § 327). On February 26,1959 section 327 of the by-laws was amended by *120 adding the following: ‘ ‘ Two of said years shall have been rendered since September 1, 1948, in one or more elementary or junior high schools, classified or classifiable by the Superintendent of Schools at the time of such service, as schools presenting difficult instructional, guidance and administrative problems by reason of 1. reading grade, 2. intelligence quotients, 3. language handicap, 4. percentage of pupils receiving free lunch and 5. pupil mobility. These two years of teaching experience shall be obtainable, if needed, on request, through assignment by the Superintendent of Schools to a school ait the same school level, in the field of the teacher’s license. A teacher serving under regular appointment in a day high school, may obtain such two years of teaching experience, if needed, upon request, through assignment to the ninth year of a junior high school in the field of his license or in a related field.”
The explanation of the purpose of the amendment, as recorded in the minutes of the board for February 26, 1959 is as follows: “ The purpose of these amendments is to secure as applicants for the license Assistant to Principal teachers who have had adequate preparation and background for the guidance functions of the position of Assistant to Principal. This preparation, therefore, will include * * * two years of teaching experience in schools in which such problems are presented in intensified form.”
Petitioners, with one exception, are duly appointed teachers in the public schools of the City of New York who have completed or who, by the Fall of 1960, will have completed five years of teaching service. The one exception is a regular teacher who has served five years in a high school in Levittown, N. Y. But for the amendment of section 327 of the board’s by-laws, they would be eligible to participate in the next examination for license as assistant to principal, expected to be held in the Fall of 1960. If the validity of the amendment is upheld, they would have to obtain transfers to schools presenting the problems referred to in the amendment, known as “ special service schools ”, and teach in such schools for two years before becoming eligible for license as assistant to principal.
Petitioners charge that ‘ ‘ the real purpose of the amendment # * * is to secure additional regular teacher personnel for the special service ’ elementary and junior high schools in the City of New York by compelling regular teachers who desire to take the examination for said license to transfer to such schools in order to meet the new eligibility requirements therefor”. Such a purpose, they contend, is not a proper one since under the law appointments to the position of assistant to principal *121 must be made solely according to merit and fitness ascertained, as far as practicable, by competitive examination.
The only evidence submitted by petitioners in support of their claim consists of (1) the fact that a Commission on Integration appointed by the board, in December, 1954 submitted a final report in June, 1958 which recommended that “ applicants for promotion to supervisory positions be required to serve a three year period in the subject schools ” in order to solve the difficulty of properly staffing those schools (the special service schools), and (2) a “ progress report ” by a subcommission of the Commission on Integration which, after making the same recommendation, stated that on February 26, 1959 “ such experience was made part of the eligibility requirements for the position of assistant to principal”. This evidence does not, however, indicate or tend to indicate that the board, in adopting the requirement of teaching experience in the special service schools, did so in order to achieve the purpose which motivated the commission’s recommendation. The board’s explanation of why it adopted the amendment, as recorded in its minutes, is wholly different. The board’s answer denies that its real purpose was to secure teachers for the special service schools. The answering affidavit of Superintendent of Schools John J. Theobald states that the amendment was adopted as the result of a study conducted by the members of his Committee on Law and License, in order “ to insure the long range development of a strong guidance program at the elementary and junior high school level by the appointment of licensed assistants to principal who are specially qualified not only by academic preparation but also by actual professional field experience.” Superintendent Theobald proceeds to elaborate upon this statement in the following persuasive analysis of the problem confronting the school system which the amendment was designed to meet:
“ The prime consideration in adoption of the by-law amendment was the needs of the school system and of the children who are being educated therein. The biggest problem in education which faces us today is the problem of more adequate orientation and stimulation for the children who come from the less privileged areas of this city. These are the areas in which moral and social maladjustments are most effective in terms of their interference in the development of the fullest potential of the child. Our failure to tap these resources represents a loss of manpower for tomorrow which this nation and this city can ill afford. When I assumed my present office, I found what I deemed to be a woeful inadequacy of guidance services and *122 guidance programs in our city system. Other cities, in a relative sense, have moved far ahead of us. It is my desire to correct this inadequacy but to do so will require considerable time and planning. I mentioned elsewhere in this statement the fact that in one year I have increased the number of guidance personnel by 44 per cent. This is but a beginning of what we must do and no amount of expansion of guidance personnel will produce effective programs unless the people in charge of the individual schools have, at least, a reasonable understanding of the problems of guidance and the role which it can play in the matter of educational effectiveness. On the other hand, leadership by a person who combines reasonable knowledge of both the clinical and academic phases of the subject, even though not by this token an expert himself can provide the kind of atmosphere in which the expert can thrive and in which other teachers perhaps less technically qualified can play a more significant role. It is for these reasons that I lent the weight of my office to the amendment and recommended its adoption.
“ Thus upon the recommendation of the Committee on Law and License the standards, under which service in elementary or junior high schools would be classified or classifiable, were adopted with regard to the greatest need of the system. We found that the most difficult instructional, guidance and administrative problems were presented in those schools designated as special service schools by reason of (1) reading grade, (2) intelligence quotients, (3) language handicap, (4) percentage of pupils receiving free lunch, and (5) pupil mobility. While it is true that even in so called privileged or favored areas we have classes presenting one or more of these standards, it is only in the areas under-privileged by reason of housing accommodations, economic conditions, family life, language barriers, and community attitudes that these standards are presented in intensified form in entire schools. In such areas a diligent classroom teacher is concerned with instructional guidance and administrative problems to such a degree that he becomes relatively expert in recognizing and diagnosing these problems and if also provided with the appropriate academic background can become proficient in counseling to alleviate the cause. Indeed the role of a teacher in such an area, confronted as he is with the emotional and social maladjustment problems arising from such things as improper housing conditions, parental neglect, broken homes, language barriers, and community attitudes, should be analogous to the physician or surgeon who serves in a clinic; we submit that just as the medical man prospers in his professional competency as a result of his clinical experience, *123 so too will the teacher who has acquired the first hand, intensive experience of daily confrontation with guidance problems from many sources, grow professionally. We recognize that guidance problems are not relegated to the underprivileged areas. We know too well that many serious problems instructional, guidance and administrative exist in our so called favored schools. We submit however that the assistant to principal who has had the actual day to day experience of recognition, and resolution of severe instructional, guidance and administrative problems will be better able to provide the leadership which our teachers need to deal more effectively with the situations found in any area and to assist teachers under him and throughout the system in resolving these problems.”
The Superintendent, in answer to petitioners’ contention that the amendment was a subterfuge designed to obtain teachers for the difficult schools, points out that he has authority to transfer teachers to those schools whenever he desires to do so. This is conceded in the reply affidavit submitted by petitioners.
In the light of (1) the fact that the Superintendent did not need the amendment in order to obtain teachers for the special service schools, (2) the sworn statement of the Superintendent that the amendment was not recommended for that purpose, (3) the board’s explanation of the purpose of the amendment, and (4) petitioners’ failure to submit any evidence even tending to establish their claim of an ulterior purpose, the court is constrained to hold that no triable issue as to the board’s good faith is presented. Something more than a bare charge, unsupported by evidence, is necessary to create such an issue.
Petitioners also urge that since only about 30% of the city’s elementary and junior high schools have been classified as special service schools, only about 30% of all assistants to principal will be assigned to such schools. They argue that it is unreasonable to require all applicants for the license to have special service school experience if only 30% of the licensees will be assigned to such schools. Petitioners apparently overlook the fact that the board’s aim to provide leadership in guidance problems is nowhere stated to be confined to the special service schools. Superintendent Theobald points out that “guidance problems are not relegated to the underprivileged areas ” and that ‘ ‘ many serious problems instructional, guidance and administrative exist in our so called favored schools ”, The need for leadership in guidance and related problems exists in varying degrees in all the city’s schools and not merely in those where the problems take their most intensified form. Furthermore, even if it be assumed that experience in special service schools *124 is desired only for assistants to principal who are to be assigned to schools of that character, the eligible list resulting from an examination open to those without such experience might contain, in the upper part of the list, so many names of teachers who have not taught in the difficult schools that the board would be compelled, in many instances, to appoint such teachers as assistants to principal in special service schools.
Petitioners also claim that, in many cases, teachers requesting transfers to the special service schools in order to obtain the experience required by the amendment would be compelled to teach out of license more than five classroom hours a week, in violation of section 117 of the Regulations of the State Commissioner of Education. This is categorically denied by Superintendent Theobald, who states that not one of the teachers would be required to teach illegally outside the scope of his license.
The petitioners argue also that the amendment is illegal because it gives an arbitrary and improper preference to teachers who serve for two years in the special service schools. They seem to overlook, however, that those who have not taught in such schools are given an opportunity to do so and acquire the necessary two years of experience. A temporary time extension is granted by the amendment for any examination announced prior to September 1, 1962, which gives applicants an additional year from the date fixed by section 238 (by-laws) for meeting the requirements, in order to complete the two years of teaching service in the difficult schools. The cases relied upon by petitioners (and in the brief of New York Teachers Guild, as amicus curias, submitted on a companion motion) are clearly distinguishable. The amendment under attack here does not attempt to favor some at the expense of others on untenable grounds, as was the case in each of the authorities relied upon. For example, in Matter of Cowen v. Reavy (283 N. Y. 232) the attempt to discriminate between graduates of recognized law schools and other members of the Bar was held to be without reasonable basis. In Matter of Sheridan v. Kern (255 App. Div. 57) the attempt to favor those already employed by the emergency relief bureau over others was likewise held to be unjustified. In the instant case, however, there is ample basis for the board’s decision to require teaching service in the difficult schools as part of the experience of candidates for the license of assistant to principal. To avoid the favored treatment which would otherwise be received by those who have two years experience in those schools, the board gave all other teachers the *125 opportunity to acquire the two years experience for the purposes of the next examination.
Petitioners also urge that it would he a great hardship upon them to have to transfer to the special service schools and teach an additional two years in order to qualify for the examination and the license of assistant to principal. No teacher, however, acquires a vested right to have the requirements for a higher position remain static. The board has the right to change its eligibility requirements from time to time to meet changing conditions and concepts. If the board were prohibited from increasing its experience requirements for a position while possible candidates for the position existed whose experience met its current experience requirements, beneficial changes would have to be postponed for years, to the detriment of the cause of education.
Petitioners also make such of the fact that, as the result of the amendment, some teachers would be eligible with only five years of teaching experience (viz., those who taught two of the five years in special service schools) while others, like petitioners, who have not taught in the special service schools, would need seven years of teaching experience. This is an unfortunate result of the change in experience requirements, but it does not invalidate the change.
Petitioners further contend that the amendment is illegal because no credit is given for teaching service presenting the same problems as those existing in the special service schools. There is insufficient in the papers before the court to warrant a conclusion that the board’s failure to regard teaching service in schools other than the special service schools as equivalent to service in the latter is arbitrary, capricious or unreasonable. This court may not substitute its own uninformed judgment for that of the board as to matters entrusted by law to the board’s specialized knowledge and judgment.
For the same reason, petitioners’ contention that teaching service in the difficult schools will not furnish an assistant to principal with the kind of experience he will need in that position cannot avail them in this proceeding. There is insufficient basis in the present record for upsetting the board’s determination to the contrary.
There remain a number of additional grounds upon which petitioners attack the validity of the amendment, but they do not merit detailed discussion.
The motion to set aside the amendment, insofar as it adds to the experience requirement for the license of assistant to principal, is denied and the proceeding dismissed.